MICHAEL McALPINE v. FRANK H. KRATKA.[1]

June 24, 1904.

Nos. 13,809—(74).

**Administrator's Account.**

On an appeal by a creditor of a decedent from the order of the probate court allowing an administrator's account, where two items were disallowed by the district court, *held:*

1. That, where the record returned here discloses no objection in the district court to the creditor's right to appeal upon the ground that he was not such creditor, after hearing and finding that right was waived.

2. Where a special administrator is appointed under the provisions of section 4484, G. S. 1894, he is not authorized to enter into a contract with a third party for services in protecting the real estate from trespassers, or to sell lands, to continue for a number of years beyond the probable duration of his authority.

3. A special administrator cannot, without the authority of the probate court, and a showing made of necessity, under existing exigencies, to secure the personal estate, include in his account moneys paid to redeem land from taxes, and charge the same to the estate.

Appeal by defendant, as administrator of the estate of James H. Caldwell, deceased, from an order of the district court of Itasca county, McClenahan, J., denying a motion for a new trial. Affirmed.

*C. L. Pratt* and *C. C. McCarthy,* for appellant.

*Charles J. Berryhill,* for respondent.

LOVELY, J.

This appeal is to review the action of the district court in reversing in part the order of the probate court of Itasca county allowing the account of the administrator of James H. Caldwell, deceased. Findings of fact were made by the trial judge. Motions were thereafter entered for amended findings and for a new trial, which were denied.

There were no pleadings filed in the district court, but an extended examination of the many items contained in the administrator's account. The findings of the trial court sustained all but two, which

[1] Reported in 100 N. W. 233.

were disallowed, whereby under the assignments it becomes necessary to consider the conclusions of the trial judge in these respects upon the evidence and the course of counsel at the trial.

The appeal to the district court was by McAlpine as a creditor of the deceased, Caldwell, who asserts that his claim was allowed in the probate court; but it is objected in this court for the first time that the record does not disclose that such person had a valid claim, entitling him to contest the decision of the probate court, under section 4666, G. S. 1894. The record shows nothing in this respect further than in McAlpine's notice of appeal he claimed to be a creditor, as appeared from the claim register in the probate court, and that as such creditor he appeals to the district court from the order allowing the administrator's account and each item thereof. When the cause was brought on for hearing in the district court, no question was raised as to McAlpine's right to appeal, and it seems that this was taken for granted. The entire hearing was upon the theory that there was a proper contestant of the administrator's account before the court, and it is now too late to attack his right upon the grounds suggested on this review.

To a proper understanding of the contested questions upon which the trial court passed, it may be premised that the decedent, Caldwell, was a former resident of Minnesota, died while absent from the state in Chicago, in 1894, leaving a widow and four children, who had no knowledge that he was possessed of any property. One F. O. Werden, a cruiser, discovered, however, that he held the title to pine lands in Itasca and St. Louis counties, and notified the widow of that fact. There had been trespasses committed on these lands, and the widow sought the appointment of a special administrator for the purpose of immediately, as seemed necessary, protecting the property from waste, when one Frank H. Kratka, the brother of the widow, was appointed to that trust on April 19, 1901, by the probate court of Itasca county. Kratka, as special administrator, at once commenced efforts to obtain remuneration for the injuries done to the land. In furtherance of this purpose, he entered into a contract, in writing, with Werden, whereby the latter engaged to ascertain the amount of trespasses on the property, and to take effective means to reimburse the estate for the damages to the land; also to secure a speedy sale thereof under the direction of

the administrator, for which he was to be paid from the funds of the estate his expenses, and receive twenty per cent. of the net proceeds realized from the settlement of suits and sales of the timber; which agreement was to continue in force for three years, unless the parties mutually agreed for the termination thereof before that time. Such agreement was approved by the probate court. With the assistance of Werden, Kratka obtained evidence, commenced a suit at law to recover for the trespasses on the timber lands, and secured $2,850, which was paid as damages, and constituted the only personal property and funds from which the administrator's account could be liquidated. Under the contract between Werden and the special administrator there was a payment of the amounts claimed to be due, based entirely upon the written agreement, under which he was paid by such administrator two sums of $200 each, the first on May 27, 1901, and the second on December 6, 1901, after he had been appointed general administrator on May 24 following, which he charged against the estate in the account appealed from, and were allowed by the probate court, but disallowed on the appeal to the district court upon the ground that the contract, which was the sole basis for such allowance, was illegal, and in excess of the powers of the special administrator.

That Werden's services may have entitled him to compensation from the estate is not involved, for there was no showing of their value, and from the findings based upon the evidence of the trial court it is impossible to avoid the conclusion that the agreement for a percentage contingent upon the amount obtained against the trespassers could not be sustained. The powers of a special administrator are specifically defined and limited by statute. They are to collect the goods, chattels, and credits of the deceased, care for, gather, and secure crops, preserve all of the property of the deceased, and he may commence and maintain actions in his administrative capacity for that purpose (G. S. 1894, § 4484); but beyond this a special administrator has no authority to make contracts that will interfere with or prejudice the duties or powers of the general administrator to be thereafter appointed, or incumber the rights and privileges of the heirs or beneficiaries (Larson v. Johnson, 72 Minn. 441, 75 N. W. 699). It is not necessary to consider whether a general administrator would have such powers—which may well be doubted—for the contract in this case was made with the

special administrator, and there is no sufficient showing that the payments made under the contract with such special administrator rested upon any other evidence than a settlement between him and Werden upon the terms of the written agreement. While it may be that the services rendered by Werden were of benefit to the estate, the findings do not distinctively show, as would be essential, that such was the case.

It was found by the trial court upon sufficient evidence that these lands had been sold for taxes in 1900, and that the special administrator, believing that the redemption period was about to expire, paid into the treasury of the county the sum of $659.43 to redeem the same from tax sales, and at the same time the further sum of $52.90 for taxes for the years 1896, 1897, 1898, and 1899, also $8.10, of which the last-named sum appears on the treasurer's receipt as taxes for 1899. These items were claimed and charged as a demand against the estate by the administrator, and were allowed by the probate court, but disallowed on the appeal to the district court. The powers of the special administrator to pay these taxes, if justifiable, would depend only in an extreme case upon exigencies that required him to do so to save the personal estate and turn it over to the general administrator. There was nothing in the evidence to show that such conditions existed, or required the payment of these obligations by an administrator.

Taxes should ordinarily be allowed in probate court, under the provisions of chapter 97, p. 221, Laws 1895; but if it were true that during the period in which the special administrator exercised his powers his authority was upon such necessities to secure the estate sufficient to require the redemption of these taxes, this was not found by the trial court, but the evidence tends to show that there was on the real estate a mortgage of $4,500, that it was foreclosed and bid in by the wife of the administrator, and was unredeemed; so that the payment of the taxes out of the personal property was of no utility, and did not furnish justification for his act as special administrator in taking from the personal estate assets that did not inure to its benefit in any way.

Order of the trial court affirmed.